The next case is Louis Vuitton v. My Other Bag. May it please the Court, my name is Paul Allen Levy, appearing this morning from My Other Bag. There is so much to say about octane fitness that I really want to take the first minute of my tent to talk about the copyright side of the case because otherwise I might not get to it answering questions about octane fitness. Our main argument on the copyright side of the case is that the district court said that fees were denied under the copyright law because the copyright claims were not so weak as to be exceptional, even though the exceptional case language is to be found only in the Lanham Act. Unlike the Lanham Act, where you would expect courts to award fees only in some minority of cases, the data set forth in the Supreme Court's Kurtzang opinion, footnote 3, suggests that copyright parties who prevail are awarded fees in the majority of cases, more often than not. So you're focusing on the language at the conclusion of the opinion. That is correct. That's correct. The district judge's copyright claim was not so weak as to render its pursuit exceptional. That's correct. He's saying that's a misapplication of the statute. Yes, and that's alone enough to call for a remand to make sure that the district judge applies the proper standard. Turning now to the octane fitness . . . Didn't the district judge make additional findings with regard to the copyright claim that supports the conclusion? Well, the district judge had a recital of the standard at the beginning of his opinion, but when he got to talking about whether the claims were objectively unreasonable, he actually never used the term objectively unreasonable. He simply said that they were not so weak as to be exceptional, and that's simply an error of law. He said they were not so objectively unreasonable, right? I don't believe that that was . . . In your papers, you emphasize and focus on the fact that he said so objectively unreasonable. That's on the octane fitness part of the case, to which I now wish to turn. Turning to the trademark side of the case, it was never realistic for a reasonable litigant to expect to prevail in arguing that a line of canvas totes bearing obvious parodies of Louis Vuitton's high fashion handbags would confuse a regional consumer about whether they came from Louis Vuitton. The summary judgment ruling repeatedly said that the joke or parody was obvious, and that also said, quote, any regional observer would grasp that, again, quote, M.O.B.'s totes are not replacements for Louis Vuitton's designer handbags. That's tantamount to saying, I submit, that it was objectively unreasonable for Louis Vuitton not to recognize that fact, the lack of confusion. Does that mean that in any case in which summary judgment is granted for a defendant, there should be an award of attorney's fees? After all, in order to grant summary judgment, you have to find that no reasonable jury could conclude that the claim was valid. I think in some cases, the summary judgment ruling may be closer, but when the district court uses the strong language that the district court used in this case, saying that the parodies were obvious, it seems to me that at the attorney fee stage of the case, you have to take the summary judgment conclusion as stated. Or when the judge says, it's not the question of a reasonable juror, any reasonable observer would grasp that M.O.B.'s totes are not replacements for Louis Vuitton's designer handbags. It's between a reasonable juror and a reasonable observer. Well, the reasonable observer standard governs the substance of the decision under the copyright laws. And indeed, Louis Vuitton admitted on its appeal from the merits that its real focus in this case— In order to get summary judgment, you have to show that any reasonable juror would think that any reasonable observer would see a parody. Is that what you have to do? I'm just trying to figure out what if any space there is between a claim that is denied on summary judgment and a claim that warrants an award of attorney's fees? It seems to me you have to look at the strength of the findings in the summary judgment ruling. And the findings here, and the way it was treated on appeal as well, were sufficiently strong to separate it from the run of summary judgment decisions. Am I responding? So indeed, Louis Vuitton admitted on its appeal from the merits that its real focus in this case was the dilution claim when it was asked at oral argument about infringement and why it didn't do a consumer survey. It said, well, yes, we normally do that in infringement cases, but here we were focused on dilution. And that's why its appellate brief at page 35 of their blue brief in the first time around boldly conceded on page 35 that there was no confusion, that this was a case of consumers trying to get cheap cachet. As for dilution, because parody is a complete defense to a dilution claim, the summary judgment determination that the parody was obvious made it objectively unreasonable to sue for dilution. Now, they did have a designation of source argument, but as district court said, and as this court said in affirming, that was based on a miscitation of the record. And miscitations of the record are not reasonable arguments. Now the main holding of Octane Fitness, whose application to this case is now established in Sleepy's, was that an exceptional case is simply one that stands out from others with respect to the substantive strength of the party's litigating position, considering both the governing law and the facts of the case, or the unreasonable matter in which the case was litigated. And although the court— It's a difficult standard. You'd acknowledge it's a difficult standard to figure out at the appellate court level after the district court has articulated the correct standard and purported to apply it, what makes, which cases stand out in that way? I mean, the Octane Fitness also says it should be what exceptional means, uncommon, rare, not ordinary. And so it can't be the case that any time the plaintiff wins on, or the defendant wins on summary judgment, that these are merited. I think that the standard, and the Supreme Court used this term, of course, on the copyright side in the Kurtzank Fitness, but the standard for deciding whether a case stands out is objective unreasonableness. And that that really applies in the trademark side as well. And unfortunately, the district court, although did use the term objectively unreasonable in parts of his opinion, he also said that the arguments had to be so objectively unreasonable that no party could see an opening. That's the puzzle again, because I thought that you began your argument by saying that the copyright standard is different than the Lanham Act standard, and now you're saying they're basically both the same. They're basically about objectively unreasonable. Well, first of all, I think given the way Octane Fitness was written, the case has to stand out before you get to either on strength of position or a way in which the case was litigated. I'm not sure you would have a case in which the argument was, the claim was objectively reasonable, but nevertheless, you got to an award through the application of the gestalt factors, so to speak. I think the reason why fee awards are going to be much less common in trademark cases is that likelihood of confusion cases outside the parity area tend to be much more squishy, and it's much less likely that you'll have an objectively unreasonable claim. I do want, before my time expires, to turn to the compensation to deterrence issue that we raised in our brief. The district court's ruling on this issue was wrong, both because it paid no heed to the need for compensation for expressive users and the need for incentives for expressive users to defend their speech, and because it overstated concern for disincentives for overbearing trademark holders. It ignored the fact that trademark holders already have significant incentives to enforce their mark. They can seek damages. They can obtain damages as well as fees, and given those strong financial incentives, courts need to provide disincentives when suit is brought over an obvious parity. The trial court also overstated, in our view, the fairness impact on trademark holders of awarding fees in a case like this. The owner of a famous mark like Louis Vuitton faces no danger of genericide, and even in the Malaco case, the one case that the district court cited with respect to this so-called duty to enforce, the court said there's no duty to sue over every use that could possibly infringe or dilute. But even if we're wrong about our argument that there's no duty to enforce, that's just another incentive for enforcement, and the courts need to provide counter-incentives so that trademark holders don't bring weak claims over parities. I see that my time has expired, and I—unless the court has further questions. May it please the court, I'm David Korzenich, Miller-Korzenich-Summers-Raymond, counsel for the defendant appellant in my other bag. I am one of the attorneys, there are attorneys in California, Brian Philpott and his colleague Corey Donaldson, who defended Tara Martin's company and vindicated her fair use defense all the way through a cert petition to the Supreme Court. We stuck with her, even though it became quickly clear that she could not pay. The very fact of this oppressive litigation, right after it started, led distributors to walk away from her. As the record shows, her income before this lawsuit began was almost $1 million a year, her revenues. And after that, in the year that followed, it fell to $350,000, and I can say she's out of business now. But we stuck with her, because if we didn't, she would have had to cave. And we stuck with her, because we believed in the sure merit of her fair use defense, and the importance of this fair use defense more broadly, is when the proper boundaries of fair use are policed and vindicated. Not only is the client well served, but the public is well served by that as well. And one thing that this court below erred in was that it focused on the disincentives that should be placed upon some plaintiff who ought to be punished. We think they should. But the real issue is whether there should be incentives for those who defend the fair use to make sure that there's some value in their doing so. And it was especially important to stick with her. Especially against cynical enforcers like L.V., who sue even when they know full well that they have suffered no harm, no dilution harm. They were never able to articulate it to this court when we were here on the merits appeal. And they were never able to articulate any confusion harm, which they walked away from when they were before your honors before. Thank you, Your Honor. Judge Livingston, and may it please the court, Katelyn Halligan on behalf of Louis Vuitton. The district court felt strongly here with respect to the merits of this case, and as the Supreme Court instructed in Kurtz's saying, the district court was also in the best position to assess whether or not fees were appropriate here. The district court determined that they were not, and that was certainly not an abuse of discretion. I would like to address each of the three points that Mr. Levy addressed. The legal standard, the role of parity, and what role, if any, compensation and deterrence concerns should play here. First of all, with respect to the legal standard. This court has obviously decided that octane fitness does apply here. The district court understood that that might well happen. It recited those factors, page 396. The district court effectively did apply octanes. Absolutely, Your Honor. Assuming arguendo that it applied, so we're past that. Yes, absolutely, Your Honor. With respect to the role of summary judgment, the question that Your Honor was asking, there is no suggestion in any of the case law that a decision on summary judgment itself warrants fees. And I believe Kurtz's saying itself was decided on summary judgment, and presumably, if that was sufficient to be exceptionally meritless, we would have seen something of that from the Supreme Court. It clearly can't be just prevailing on summary judgment. But the articulation of a standard that says this was not so that arguments could be squeezed, I mean, maybe this comes down to what is objectively unreasonable mean, and that's a difficult standard to give content to, but that sounds like a pretty hard, difficult standard. You might even say it would be beyond rare when fees would be awarded if that's the standard. I think the fairest reading of what the district court was doing there was that the district court was simply reciting language that had been used in another decision by another district court. The district court went on to carefully and thoroughly apply each of the factors set forth in Octane Fitness. It looked at whether or not the litigating position was objectively unreasonable. It concluded that it was not. It also found that there was no indication that this case had been litigated in an unreasonable or unduly vexatious way, and it explained why. To avoid being accused of sleeping on your rights, is it necessary to appeal a grant of summary judgment? Is it necessary to seek in-bank review? Is it essential to take a case all the way to the Supreme Court and seek certiorari in order to protect against a later claim that you have insufficiently policed your rights? Well, two responses to that, Your Honor. First of all, I don't think there's anything in the case law or really in fair play to suggest that if a litigant believes that it has a reasonable position that it cannot or should not press that, or that it should be penalized for doing so. If you look at the cases, for example, in Kurtzang, which the Supreme Court describes as meeting this high bar, the court cites a case in which there were hundreds of meritless suits filed by a plaintiff. So pursuing your rights to appeal don't, I think, come close to that. But additionally, Your Honor, one of the reasons that this case was important is that the circuit court, I believe, made new law with respect to parody. In the Starbucks case from 2009, which Judge Livingston wrote, the court there not only declined to follow the treatment of parody in Ho Diggity Dog, but it also distinguished between what it called a subtle satire, which I believe the court suggests is not something that affects the trademark analysis here and does not qualify as fair use. Here, the circuit court said that a, quote, gentle, even complimentary parody is sufficient in order to qualify as fair use and to affect the dilution by blurring standards. That is a significant development in the law and one that warranted some consideration. Yes, it was, Your Honor, but it still is something that is a different treatment as the district court found in reviewing the fee request. We should have, maybe we should have written an opinion to make emphatically clear what we thought about your claim. Your Honor, the district court examined the record here very closely. The district court wrote a lengthy opinion explaining why each of the factors were not satisfied here independently as well as with respect to a totality of the circumstances. The district court explained that there were colorable grounds to advance the claims that Louis Vuitton advanced here. It looked closely at the record of litigation and it also looked at the considerations of compensation and deterrence. The deference that this court should give the district court on a fees determination by the Supreme Court's instruction is substantial, and I don't think there's anything erroneous in either the legal standard or the factual determinations that were made there. Could you address briefly, as the time is ticking, Mr. Levy's argument that the Copyright Act standard is distinct and does not require such an exceptional, a finding of exceptionality as the Lanham Act standard. Absolutely, Your Honor. To be frank, I'm not sure exactly what to make of that argument for the following reason. Octane Fitness cites Fogarty in footnote six. And this court also, when it applies Octane Fitness and Sleepy's, looks at the Fogarty factor, so it seems to me that although he is certainly correct that the words in the statute may be different, that the same factors have been applied. And as he himself suggests, I think, suggested in his argument, as you pointed out, there doesn't seem to be any meaningful difference in the way the Supreme Court has treated the factors that are relevant in terms of deciding whether fees are appropriate. I agree with you, I have trouble, it's hard enough figuring out whether a claim is good or bad without having an infinite series of distinctions of just how bad is it. Is it bad enough to be unreasonable? Is it bad enough to be exceptional? Is it bad enough to be frivolous? A hard business to get into. But what do you make of the statistics? I'm just puzzled at the idea that on the one hand, we have a standard that stresses exceptionality, and that implies rarity, while in the Copyright Act, it seems that fees are given out rather more freely than that kind of standard would suggest. Does Octane Fitness somehow actually have some backlash effect on the Copyright Act? What are we to do with it? It might be, Your Honor, I don't know, that if one were to look at the underlying nature of the claims and assess whether or not the underlying claims in copyright cases tend more on average to be frivolous and unreasonable or perhaps litigated in an unreasonably vexed way, maybe that would drive a distinction. But in any event, I think that what is most relevant in terms of determining whether or not the district court abused its discretion, there doesn't seem to be any space when you look at the instructions from the Supreme Court on what factors to consider. And MOB has urged this court, as this court did, to adopt Octane Fitness. And Octane Fitness cites the same factors that are considered for purposes of the copyright act. But the statutory language is different. But let me ask you a question. You just used the word frivolous and unreasonable in talking about how often such claims are made in the copyright context. It's not your argument, I take it, that a claim has to be frivolous before an award of fees or a defense has to be made. No, I'm not suggesting that, Your Honor. And what I am suggesting is that what the Supreme Court has instructed courts to look at is among the other two factors, the three Fogarty factors as well as the vexatiousness or lack thereof of the litigation is the substantive strength of the litigating position. The district court did that very carefully. It did so after rejecting our position on the merits. And it explained why it was that the position that Louis Vuitton came to the court with was colorable. And that is entitled to significant deference as well as is its assessment of the specific factors which it makes in its merits opinion. The district court's pointing to other factors which seem to me less persuasive. I mean, when you say multi-factor analysis, it's difficult for the plaintiff to assess. That would be true in all trademark cases. In factors like that, and the weight on a trademark owner has to police its mark, well, that's true generally. So there's some discussion of the specifics of the case, but a lot of a bow to general factors that really don't do any work in the analysis. I think that there are some points at which the district court does recite points that are true about this case and perhaps about other cases. But first of all, I think, Your Honor, you have to read the merits decision alongside the fees decision. And if you look at the merits decision, one of the things that the district court explains is that there are arguments. In fact, the district court finds them apparently convincing with respect to a number of the factors on these claims. But it is the decision that this is parity that then leads the court to assess those factors differently. And so the position that there is, for example, a strong mark, a degree of distinctiveness, exclusivity, those are clearly points that the district court accepts. The decision that it is parity then colors those, and we would ask your court to follow the district court in not treating that with hindsight. So it's parity after the district court rules, but there were good faith reasons, as the district court itself acknowledged, to believe that it was not parity. In addition to the source designation argument, the record itself lays out the assessment that Louis Vuitton made and includes an exchange of letters in which Louis Vuitton considered whether or not this was arguably parity. So this was not a hasty determination, and it's that backdrop against which the district court makes its decision. I'd like to touch on the compensation and deterrence factors, if I can, I see my time is running. The district court said, and I quote, that Louis Vuitton's litigation conduct was nowhere near qualifying as exceptional. That determination is entitled to deference, and it stands alongside the more general proposition that a trademark owner has to police its mark. The district court found that, in fact, Louis Vuitton had prevailed in much of its litigation, and it found specifically that there was no concrete evidence that there was any improper motive here in bringing this litigation. Those determinations all should be accorded substantial deference. Finally, with respect to the First Amendment concerns that are raised by Miki as well as by Mr. Levy. Those are addressed, I would submit, in the merits decision. Those are addressed in the determination that because this court concluded that it was parity, that the analysis of fair use as well as the factors that make up the elements of each of these claims come out differently. I don't believe there is any case law which suggests that those same concerns independently merit fees when they would otherwise not be appropriate. And finally, with respect to the disparity point, in terms of the disparity in the size of the two entities. The district court considered that as well. It acknowledged it explicitly. It rejected it. This court, Judge Lynch, in Hudson versus Universal Pictures, you acknowledge that disparity is not appropriate in deciding whether to award fees. And finally, in a case involving parity, it might frequently be the case that there is a disparity in resources. Because to have a famous mark that would be accorded protection against dilution by blurring, you might well be a larger entity. And so for that to affect the balancing of fees would be the sort of broad brush strokes rule that has no support in the case law or the statute. There are no other questions. Thank you, Your Honor. A few, to the extent that I can fit a few points into a minute. Parity drives the decision, says Ms. Halligan. Don't apply that decision in hindsight when there were good faith reasons to file the lawsuit. But that's exactly the problem. Good faith reasons aren't enough. It's objective unreasonableness. And the district court, had the district court simply applied objective unreasonableness, yes, its determination would be entitled to deference, but it appears to have applied a different standard. Now I'd like to turn to a case that was cited by Amici, answering perhaps Judge Livingston's question about what is it to be objectively unreasonable. In the case of Sofa v. Dodger Productions, cited a couple of times by the Amici in their brief. The court said, in light of the education that Sofa, the plaintiff in that case, received as the plaintiff. Sofa should have known from the outset that its chances of success in this case were slim to none. And we think that taking the fact that the parity was obvious, therefore they should have known that it was a parity and that they were litigating, they had to litigate under a parity standard, they should have known at the outset that their chances of winning this case were slim to none, and that's enough to make the litigation objectively unreasonable. Thank you, we will take the matter under advisement, and well argued on both sides. Thank you. Great job, as I would expect. Thank you. Court is adjourned.